Parker G. Stinar, Esq. (pro hac vice)
Patrick C. Lannen, Esq. (pro hac vice)
**STINAR LANNEN, PLLC**
280 W. Maple Rd., Ste. 200
Birmingham, Michigan 48009
Tel: (248) 565-2690
Fax: (248) 565-2691
Email: Parker@StinarLannenLaw.com
Patrick@StinarLannenLaw.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: APPLE AIRTAG MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>JANE E.H. DOE - 43<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | MDL No. 3199<br>Case No. 5:26-md-03199-NW<br>Member Case No. ___________<br>Hon. Noël Wise<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Negligence (California Law)<br>2. Strict Products Liability—Design Defect (California Law)<br>3. Strict Products Liability—Failure to Warn (California Law)<br>4. UCL—Unlawful Prong (California Law)<br>5. UCL—Unfair Prong (California Law)<br>6. Strict Liability—Design Defect (South Carolina Law, S.C. Code Ann. § 15-73-10) (in the alternative)<br>7. Strict Liability—Failure to Warn (South Carolina Law, S.C. Code Ann. § 15-73-10) (in the alternative)<br>8. Negligence (South Carolina Law) (in the alternative)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane E.H. Doe - 43 (“Plaintiff”), through counsel, brings this Complaint against Defendant Apple Inc. She files it directly in *In re Apple AirTag Marketing, Sales Practices and Products Liability Litigation*, MDL No. 3199, under the Court’s direct-filing order. She alleges as follows, on personal knowledge as to herself and on information and belief as to all other matters.

## INTRODUCTION

1. Defendant Apple Inc. ("Apple") must be held accountable for its continuing failure to protect the public from being stalked with its product, the Apple AirTag® ("AirTag").

2. In 2021, Apple released the AirTag. It knew the device could—and would—be bought and used by abusive, controlling people to track, coerce, and endanger their victims.

3. Apple also knew in 2021 that adequate safeguards were not yet in place. It released the AirTag anyway. Since then, Apple has played catch-up. It has quietly added features that still fail to curb the dangers of a product that is now more than five years old.

4. Plaintiff is one of the people Apple's choices left exposed. She holds a permanent order of protection against her ex-husband ("Stalker"). In 2026, he tracked her with an Apple AirTag anyway, for months, in Ninety Six, South Carolina.

5. Plaintiff carried an Android phone. Apple never warned her. She learned of the tracking only when Stalker slipped and mentioned it.

6. Stalker sent Plaintiff screenshots showing places she had been. He learned all of her safe places.

7. Apple made its design, warning, and release decisions at its headquarters in Cupertino, California. Under California law, those acts and omissions constitute negligence, strict products liability for design defect and failure to warn, and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. In the alternative, and to the extent South Carolina law governs any issue, Apple's acts and omissions give rise to the South Carolina claims pleaded below. Plaintiff seeks actual, punitive, exemplary, restitutionary, injunctive, and other relief.

## PARTIES

8. Plaintiff is an adult individual. She is domiciled in, and a citizen of, the State of South Carolina. She resides in Ninety Six, South Carolina. She intends to remain in South Carolina indefinitely.

9. Defendant Apple Inc. is a corporation organized under the laws of the State of California. Its principal place of business is in Cupertino, California. Apple is therefore a citizen of California for purposes of 28 U.S.C. § 1332(c)(1). Apple is an American multinational technology company. Among its consumer electronics is the AirTag. Apple oversees all aspects of the AirTag, including its design, manufacture, marketing, technical support, and maintenance. Apple also designs, operates, and maintains the Find My network through which AirTags function, and the unwanted-tracking alerts and detection tools on which persons like Plaintiff depend. Apple is a manufacturer and seller of the AirTag.

**JURISDICTION, VENUE, AND DIRECT FILING**

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity exists. Plaintiff is a citizen of South Carolina. Apple is a citizen of California. No defendant shares Plaintiff's citizenship.

11. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks actual damages for mental anguish, emotional distress, fear for her safety, and the loss of her privacy and of the safe places she relied on to protect herself from Stalker. She also seeks punitive or exemplary damages. Together, these damages exceed the jurisdictional threshold.

12. This Court has general and specific personal jurisdiction over Apple. Apple is incorporated in California and has its principal place of business in this District. Apple is at home here.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Apple resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here. On information and belief, Apple designed the AirTag, designed its anti-stalking safeguards, decided to release it, and decided how to warn the public from its Cupertino headquarters. Plaintiff chooses this District as the venue for this action for all purposes, including trial.

14. Plaintiff files this Complaint directly in this District and in MDL No. 3199, as permitted by Pretrial Order No. 1 (the "Direct Filing Order"). Under the Direct Filing Order, Plaintiff designates the Northern District of California as the proper venue for this action.

15. Venue in this District does not depend on the Direct Filing Order. Because Apple resides here and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here, Plaintiff could have filed this action in this District independent of MDL No. 3199. Plaintiff does not designate any other district as her home or transferor venue.

16. **Intradistrict Assignment.** Under Civil L.R. 3-2(c) and 3-5(b), this action relates to MDL No. 3199. It should be assigned to the Division and the Judge presiding over that proceeding.

## CHOICE OF LAW

17. Plaintiff contends that California law governs her claims. Plaintiff pleads her California-law claims first, in Counts I through V. She pleads her South Carolina claims, in Counts VI through VIII, in the alternative.

18. California law should govern Plaintiff's claims. This action was filed in this District, and California's choice-of-law rules therefore apply. The conduct Plaintiff challenges occurred in California. On information and belief, Apple's officers and managing agents in Cupertino made the decisions to release the AirTag with safeguards Apple knew were inadequate; to keep selling it after tens of thousands of stalking reports; to deliver safety fixes through owner-dependent firmware; and to describe stalking incidents to the public as "rare." California has a strong interest in regulating the conduct of a California corporation that designs dangerous products in California and sells them nationwide.

19. In the alternative, South Carolina law should govern the South Carolina-law counts to the extent the Court determines that South Carolina has the greater interest in any issue. Plaintiff was tracked in South Carolina and suffered her injuries there.

20. Plaintiff does not concede that any conflict exists between South Carolina law and California law on any issue. If a true conflict exists, Plaintiff reserves the right to brief the choice of law at the appropriate stage.

## GENERAL ALLEGATIONS

21. On April 2, 2024, ITV News in the United Kingdom aired a report on AirTag stalking.[1] In response, Apple stated: "We have identified even more ways we can update AirTag safety warnings and help guard against further unwanted tracking."

22. This promise of future, unspecified action came too late for Plaintiff. More than two years after Apple made it, Apple's product was used to track her. The time for adequate safety warnings and better protections was April 2021, before the AirTag's release. It is unconscionable for Apple to keep on the market a product it knows is still unsafe.

23. Apple has always known that any safeguards it built into AirTags would only, in Apple's own words, "deter as opposed to prevent malicious use."

24. Each year, an estimated 13.5 million people are stalked in the United States. Nearly one in three women and one in six men experience stalking at some point in their lives.[2]

25. Apple's AirTags have become a critical—and shameful—part of this problem. From 2021 forward, Apple has received over 40,000 stalking reports, at times averaging 1,000 complaints per month.

26. Stalking takes many forms. Most often it involves unwanted, repeated behavior that would cause fear in a reasonable person. Whatever the method, the common thread is the fear it creates in the victim.

---

[1] ITV News, *AirTags Becoming "Weapon of Choice of Stalkers" as GPS Tracker Cases Rocket by 317%*, YouTube (Apr. 2, 2024), https://www.youtube.com/watch?v=TBhYdgt1FhE.

[2] Stalking Prevention, Awareness, and Resource Ctr. (SPARC), *Stalking Fact Sheet* 1 (2019), https://www.stalkingawareness.org/wp-content/uploads/2019/01/SPARC_StalkngFactSheet_2018_FINAL.pdf.

27. That fear erodes a victim's autonomy and disrupts daily life. One in eight employed stalking victims misses work because of the victimization. More than half of those lose more than five days of work. One in seven stalking victims moves as a result.[3]

28. Stalking victims suffer much higher rates of depression, anxiety, insomnia, and social dysfunction than the general population. Most report a fear of not knowing what will happen next. Stalking is a significant risk factor for homicide in abusive relationships.

29. No one disputes any of this. Stalking is a serious, well-documented phenomenon. It ruins lives, and it ends them.

30. Knowing all this, Apple released a small, concealable device. It allows anyone with an iPhone to continuously and precisely track another person's location for $29.00.

31. Before releasing the AirTag in April 2021, Apple knew it would be used as a stalking tool. Apple even designed certain features to reduce that risk. But Apple released the product knowing those features could not prevent stalking.

32. At release, Apple knew the AirTag's anti-stalking measures were inadequate for at least these reasons:

a. The iPhone notification system alerted users to an unknown AirTag only after three days—an eternity in a stalking situation;

b. Android users received no notifications at all, leaving roughly half of the smartphone-using population unprotected;

c. The AirTag's speaker, meant to alert a victim to an unknown AirTag, was quiet, easily muffled, and easily defeated, and instructions for disabling it were widely available online; and

d. The AirTag's small, light, and concealable form made it trivially easy to hide in a victim's belongings or vehicle.

[3] Katrina Baum et al., U.S. Dep't of Just., Bureau of Just. Stat., *Stalking Victimization in the United States* 1 (Jan. 2009), https://www.justice.gov/archive/ovw/docs/bjs-stalking-rpt.pdf.

33. Apple made a calculated business decision to release the AirTag anyway. It put market timing and profits ahead of human safety.

34. The consequences were swift and predictable. Soon after the April 2021 release, reports poured in from people who had been stalked, tracked, and terrorized with AirTags.

35. Stalkers have used AirTags to track victims to their homes, workplaces, and places of refuge. AirTags have been hidden in wheel wells, under bumpers, in purses, in jacket pockets, and in children's backpacks.

36. AirTags have enabled abusers in domestic situations to monitor and control the people closest to them. Many victims had no idea they were being tracked until it was too late.

37. The consequences have been as severe as possible. Multiple murders have occurred in which the killer used an AirTag to track the victim.

38. With its "stalker-proof" protections exposed as inadequate, Apple has spent five years scrambling. Most of these failures persist. Apple keeps reacting to harm its product has caused instead of preventing it. As one commentator put it: "You wouldn't allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?"[4]

## FACTUAL ALLEGATIONS

### A. How the AirTag Works

39. Apple introduced the AirTag in April 2021 as a standalone product.[5] It is about the size of a U.S. quarter. It is a tracking beacon marketed to help consumers find objects such as keys or purses.

---

[4] Ellie Fry, *Inside Chilling Rise of AirTag Stalking as Apple Device Is Branded 'Gift to Abusers'*, The Mirror (Apr. 24, 2023), https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435.

[5] Press Release, Apple Inc., *Apple Introduces AirTag* (Apr. 20, 2021), https://www.apple.com/newsroom/2021/04/apple-introduces-airtag/.

40. The AirTag uses Bluetooth Low Energy ("BLE") technology. It broadcasts a rotating identifier. Nearby Apple devices detect that signal and relay the AirTag's location to Apple's servers through the "Find My" network.

41. The Find My network turns the world's Apple devices into a mesh tracking network. Any powered-on, connected iPhone, iPad, or Mac can relay an AirTag's location. There are over two billion active Apple devices. The network works silently, without the knowledge or consent of the device owners who relay the data.

42. As a result, an AirTag's location can be updated virtually anywhere—including on the streets, parking lots, and driveways of Ninety Six, South Carolina.

**B. Apple Knew the AirTag Would Be Used to Stalk**

43. Before the AirTag's release, commentators, journalists, and domestic violence advocates publicly warned that small, cheap Bluetooth trackers would be used as stalking tools.

44. Apple was well aware of these concerns. Apple anticipated that the AirTag would be used for unwanted tracking.

45. Apple described the AirTag's anti-stalking features as designed to "deter as opposed to prevent" malicious use. That was an admission that Apple knowingly released the product with inadequate safeguards.

46. Apple launched the AirTag with only minimal safeguards. These were (a) an audible alert that sounded after three days away from the owner's iPhone, and (b) a notification that alerted iPhone users—but not Android users—to an unknown AirTag traveling with them.

47. These measures were woefully inadequate. Three days without an alert gives a stalker ample time to learn a victim's home, workplace, and routine.

48. About half of U.S. smartphone users use Android devices. At launch, they had no way to detect an AirTag tracking them. Apple released a "Tracker Detect" app for Android in December 2021, eight months after launch. The app required users to start a scan manually.

49. In February 2022, Apple announced it would cut the time before an unknown AirTag sounds from three days to a random interval between 8 and 24 hours. Even that interval gives a stalker ample time to locate a victim's home, workplace, and routine.

50. Apple's piecemeal approach—half-measures adopted only after public outcry—shows that Apple has consistently put sales ahead of safety.

**C. The AirTag's Safeguards Fail Even iPhone Users**

51. Apple's protections fail even the iPhone users they were built for. They fail Android users like Plaintiff even more.

52. The iOS "Item Safety Alerts" feature relies on algorithms that often fail to detect tracking in time. An unknown AirTag must travel with the victim for some period before any alert issues. During that window, the stalker can watch the victim's every move.

53. The alerts are easy to miss. They look like ordinary push notifications. They can be buried, swiped away, or simply overlooked. Users who turn off Location Services for privacy reasons also lose these alerts. Apple does not explain this.

54. An alert, standing alone, does not tell the victim where the AirTag is. To find it, the victim must rely on the AirTag's sound. That sound is deficient in at least four ways:

a. It is too quiet. The alert reaches about 60 decibels at most. A purse, fabric, or a car's exterior can muffle it;

b. It is not distinct. The chime sounds like countless other device alerts;

c. It is not continuous. It stops before the person can find the device; and

d. It is easily disabled. The AirTag keeps working after the speaker is removed, and online tutorials explain how.

55. Even when a victim finds an AirTag, her options are limited. She must take physical possession of it and remove its battery. Finding it may be impossible or costly. Dismantling it can compromise evidence. And the stalker can simply deploy another AirTag.

56. Safety updates to AirTag firmware are not pushed automatically to the victim. They depend on the AirTag's owner—the stalker—to install them.

**D. Feasible Safer Alternative Designs Existed**

57. At all relevant times, safer alternative designs existed. Each would have prevented or significantly reduced the risk of AirTag stalking without substantially impairing the product's utility for finding lost items. Each was economically and technologically feasible when the AirTag left Apple's control, using existing or reasonably achievable scientific knowledge. Among other things, Apple could have:

a. alerted a tracked person within minutes, not hours or days;

b. designed a louder, distinct, continuous, non-removable, and tamper-resistant speaker, and rendered the AirTag non-functional if the speaker were disabled;

c. enabled precise, on-demand location of an unknown AirTag by the person it is traveling with, so the victim could find a concealed device without police help;

d. required identity verification or account linking before activation, creating accountability and deterring anonymous stalking;

e. automatically disabled tracking when an AirTag stays near a non-owner's device for a defined period;

f. required periodic owner re-authentication to prevent indefinite passive tracking;

g. released simultaneous, equivalent, automatic detection for Android users at launch; and

h. made the AirTag larger and more conspicuous, so it could not be easily hidden under a vehicle's bumper.

58. Apple chose not to adopt any of these designs.

**E. Apple Consciously Disregarded the Danger**

59. Only weeks after the AirTag's release, Apple CEO Tim Cook was briefed on press reports describing the AirTag as "a new means of inexpensive, effective stalking." Cook was told that Apple could weather the storm: "At this time, we are not seeing this narrative gain steam in media or on social…." Apple chose to manage the narrative instead of the danger.

60. Apple's officers, directors, and managing agents, including Mr. Cook, authorized, directed, or ratified the decision to release and keep selling the AirTag without adequate safeguards. They did so with knowledge of the ongoing harm.

61. Apple publicly called AirTag stalking "rare." Its internal data showed more than 40,000 unwanted-tracking reports in the three years after release, ending in April 2024. Apple also knew that most law-enforcement requests it received about AirTags concerned stalking.

62. Apple has also failed to support victims. Its legal-process guidelines state that AirTag pairing history is available for only up to 25 days. Victims who seek protection or prosecution are often left without the evidence they need.

63. The AirTag sells for about $29. Apple has sold tens of millions. Before the AirTag, effective GPS trackers were expensive, needed monthly subscriptions, and were hard to hide. The AirTag removed those barriers.

64. The harm is ongoing. Apple continues to sell AirTags with safeguards that remain inadequate.

**PLAINTIFF'S EXPERIENCE WITH AIRTAGS**

65. At the time of the events described below, Plaintiff lived in Ninety Six, South Carolina. The tracking described below occurred in and around Ninety Six, South Carolina.

66. Plaintiff was formerly married to Stalker. She was forced to marry him shortly after she turned 16. He was years older than she was. He abused her for years.

67. About seven years ago, a court entered a permanent order of protection for Plaintiff against Stalker.

68. Stalker hid an Apple AirTag and used it to track Plaintiff's location for months. The tracking occurred in 2026, within roughly the five months before approximately June 8, 2026. The exact start date is unknown, and Stalker may have been tracking her longer.

69. Plaintiff did not consent. She did not know the AirTag was there.

70. Plaintiff used an Android phone. She did not have Tracker Detect or a similar app installed. She never received any notification that an unknown AirTag was traveling with her.

71. Plaintiff learned of the tracking only when Stalker slipped and mentioned it.

72. Stalker sent Plaintiff screenshots from his phone showing different locations where she had supposedly been. He came to know all of her safe places.

73. Stalker told Plaintiff he had removed the AirTag. He has since claimed that he put it back on her car. Plaintiff has not been able to find it, and her phone has not alerted her to it.

74. Plaintiff contacted the Greenwood County Police Department in South Carolina. She also told friends and family.

75. Plaintiff's children witnessed these events.

76. Apple's defects caused Plaintiff's harm in specific ways. Had Apple provided automatic, timely detection for Android users (paragraph 57(g)) and prompt alerts (paragraph 57(a)), Plaintiff's phone would have warned her that an unknown AirTag was traveling with her, and she would have learned of the tracking before Stalker learned her safe places, rather than only when he chose to reveal it. Had Apple enabled on-demand location of an unknown AirTag (paragraph 57(c)) and a louder, continuous speaker (paragraph 57(b)), she could locate a device that Stalker claims he has put back on her car. And had Apple disabled tracking when an AirTag stays near a non-owner's device (paragraph 57(e)), the tracking would have stopped. Each of these designs would also have deterred Stalker from using an AirTag at all.

77. As a direct and proximate result, Plaintiff suffered fear, emotional distress, and mental anguish. She lost the privacy and security of the places where she sought safety from a man against whom she holds a permanent order of protection. Because Stalker claims the AirTag is back on her car and she cannot find it, her fear continues.

**STATUTE OF LIMITATIONS AND TOLLING**

78. Under South Carolina law, an action for any injury to the person must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that she had a cause of action. S.C. Code Ann. §§ 15-3-530(5), 15-3-535. Plaintiff learned she was being tracked in or around June 2026. Her claims are timely under the applicable South Carolina and California limitations periods.

79. On December 5, 2022, a putative class action was filed against Apple in the U.S. District Court for the Northern District of California. It is captioned *Hughes v. Apple, Inc.*, No. 3:22-cv-07668-VC (the "Hughes Action"). The Hughes Action asserted claims on behalf of a proposed nationwide class of people who were tracked, stalked, or otherwise harmed through AirTags. It arose from the same course of conduct alleged here: Apple's release and continued sale of the AirTag without adequate safeguards against unwanted tracking.

80. On March 9, 2026, the Honorable Vince Chhabria entered an order denying class certification in the Hughes Action. (Hughes Action, ECF No. 287.)

81. Plaintiff's claims accrued no earlier than June 2026, when she learned she was being tracked. She filed this action within the applicable limitations periods without the need for class tolling. To the extent any earlier tracking is shown, Plaintiff reserves reliance on any applicable tolling principles.

82. In the alternative, any limitations period was tolled under applicable equitable-tolling principles and the discovery rule.

**COUNT I**

**NEGLIGENCE**

**(California Law)**

83. Plaintiff repeats and realleges all preceding paragraphs.

84. Under California negligence principles, Apple owed Plaintiff a duty of reasonable care in the design, testing, marketing, distribution, and post-sale support of the AirTag.

85. Each relevant consideration supports that duty. Harm to people like Plaintiff was highly foreseeable. The certainty that such people would be injured was great. The connection between Apple's conduct and Plaintiff's injuries was close. Moral blame attaches to Apple's knowing release of an inadequately safeguarded product. And public policy favors preventing the harm.

86. As the manufacturer that designed the AirTag and placed it into the stream of commerce, Apple had a duty to avoid exposing foreseeable users and bystanders—including

persons foreseeably tracked by the device—to unreasonable risks of harm. That duty included designing the AirTag so it would not create an unreasonable risk of use as an instrument of criminal stalking. Apple specifically anticipated and acknowledged that risk before launch.

87. Apple breached its duty. Among other things, Apple released the AirTag knowing its safeguards would only "deter as opposed to prevent" stalking; designed alerts that issue only after a tracking device has traveled with the victim for hours or days; designed a speaker too quiet, too brief, and too easily muffled to lead a victim to a concealed device; failed to adopt the feasible safer alternative designs alleged above; failed to adequately test the AirTag's anti-stalking features in real-world concealment scenarios, such as placement under a vehicle's bumper; and continued to sell the AirTag after learning of tens of thousands of stalking reports, while publicly minimizing the problem. It rushed AirTags to market and kept selling them without timely, reliable detection of unwanted tracking for Android users like Plaintiff or for iPhone users. It also gave tracked persons no reliable way to locate a hidden AirTag.

88. Apple's breach was a substantial factor in causing Plaintiff's injuries. Stalker's criminal use of the AirTag was not an unforeseeable superseding cause. It was the very harm that Apple anticipated, was warned about, and designed its safeguards—inadequately—to prevent. The AirTag's inadequate safeguards substantially enhanced Stalker's ability to track Plaintiff covertly, including to the places where she sought safety. Plaintiff carried an Android phone and never received an alert. She learned of the tracking only because Stalker revealed it. And she still cannot find or disable the AirTag that Stalker claims he put back on her car.

89. As a direct and proximate result of Apple's negligence, Plaintiff suffered the injuries described above and is entitled to compensatory damages.

90. Apple acted with malice, oppression, or fraud within the meaning of Cal. Civ. Code § 3294. Its officers, directors, and managing agents knew of the probable dangerous consequences of the AirTag's design and consciously chose not to avoid them. Plaintiff is entitled to punitive damages under California law.

**COUNT II**

**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

**(California Law)**

91. Plaintiff repeats and realleges all preceding paragraphs.

92. Apple designs, manufactures, distributes, and sells AirTags. Apple placed the AirTag used to track Plaintiff into the stream of commerce.

93. The AirTag is defective in design under the risk-benefit test. Its foreseeable risk of facilitating stalking outweighs the benefits of its design. Practical, technically feasible alternative designs existed that would have prevented or significantly reduced Plaintiff's injuries. They include automatic detection for Android users; immediate, reliable, and tamper-resistant alerts; alerts that disclose every unknown AirTag traveling with the tracked person; precise on-demand location by the tracked person; and design features that reduce covert placement and continued tracking.

94. The design defect was a substantial factor in causing Plaintiff's injuries, for the reasons alleged in paragraph 76. Stalker's criminal use of the AirTag was not an unforeseeable superseding cause. It was the very harm the AirTag's anti-stalking safeguards were designed—and failed—to prevent. Apple's admission that its safeguards would only "deter as opposed to prevent" malicious use confirms that Apple anticipated and accepted the risk of exactly this conduct.

95. As a direct and proximate result of the AirTag's defective design, Plaintiff suffered the injuries described above and is entitled to compensatory damages. Apple's conscious disregard of the known safety risks constitutes malice, oppression, or fraud under Cal. Civ. Code § 3294. Plaintiff is entitled to punitive damages under California law.

**COUNT III**

**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**

**(California Law)**

96. Plaintiff repeats and realleges all preceding paragraphs.

97. Apple designed, manufactured, distributed, and sold the AirTag used to track Plaintiff.

98. When the AirTag left Apple's possession, it posed known or knowable risks. Those risks included covert tracking of non-consenting persons and the failure of Apple's alerts to notify tracked persons like Plaintiff in time, including Android users, or to help them locate the device. Apple knew of these risks, or could have known of them in light of the information available to it at the time of manufacture and distribution. That information included its own pre-launch assessment that its safeguards would only "deter as opposed to prevent" malicious use.

99. These risks presented a substantial danger when the AirTag was used in an intended or reasonably foreseeable way. Ordinary consumers, and people like Plaintiff who could be tracked by an AirTag, would not have recognized them.

100. Apple failed to adequately warn of these risks or to instruct the public on how to detect and guard against unwanted tracking. Among other things, Apple failed to provide timely alerts to people being tracked; failed to provide alerts that are persistent, distinct, and accompanied by a sound loud and continuous enough to locate a concealed device; failed to instruct tracked persons how to locate an AirTag hidden on or under a vehicle; failed to disclose that disabling Location Services would also disable unknown-AirTag alerts; and failed to accurately disclose the scope of AirTag stalking, which Apple publicly called "rare." Apple also failed to act as a reasonable manufacturer would have acted, after sale, once it learned of tens of thousands of stalking reports.

101. Apple's failure to warn was a substantial factor in causing Plaintiff's injuries. Plaintiff never received any warning. An adequate, automatic warning on her Android phone would have told her that an unknown AirTag was traveling with her. She would have acted on it by searching her car and seeking police help. She would have done so before Stalker could use the AirTag to learn her safe places.

102. As a direct and proximate result of Apple's failure to warn, Plaintiff suffered the injuries described above and is entitled to compensatory damages. Apple's conscious disregard of the known risk also entitles Plaintiff to punitive damages under Cal. Civ. Code § 3294.

**COUNT IV**

**VIOLATION OF THE UNFAIR COMPETITION LAW: UNLAWFUL PRONG**

**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**

103. Plaintiff repeats and realleges all preceding paragraphs.

104. The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice. Cal. Bus. & Prof. Code § 17200.

105. Apple engaged in business acts and practices in California. On information and belief, Apple designed the AirTag and its safeguards, decided to release and keep selling it, and decided how to warn the public at its Cupertino headquarters.

106. Apple's conduct is unlawful. As alleged above, it constitutes negligence and products liability under California law. Each of those independent violations serves as a predicate for the UCL's unlawful prong.

107. Apple's conduct also violates the policy and purpose of the California Invasion of Privacy Act, Cal. Penal Code §§ 630 et seq. Apple designed, released, and kept selling the AirTag without adequate safeguards against unconsented location tracking. It failed to give Plaintiff, an Android user, a timely and reliable way to detect and locate the AirTag tracking her. In doing so, Apple aided, and was a substantial factor in enabling, the electronic tracking of Plaintiff's location and movements by a third party without her consent.

108. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. She suffered injury in fact and lost money or property as a result of Apple's conduct, as alleged above.

109. Under Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Apple from engaging in the unlawful business practices alleged here in connection with the sale of AirTags, and restitution to the extent permitted by law.

**COUNT V**

**VIOLATION OF THE UNFAIR COMPETITION LAW: UNFAIR PRONG**

**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**

110. Plaintiff repeats and realleges all preceding paragraphs.

111. Apple's business practices are unfair. Releasing and continuing to sell AirTags with safeguards Apple knew were inadequate is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. The gravity of the harm far outweighs any utility of Apple's conduct.

112. Apple's business practices are also unfair because they undermine public policy tethered to specific constitutional and statutory provisions. Those provisions include the California Invasion of Privacy Act, Cal. Penal Code §§ 630 et seq., and the right to privacy in the California Constitution, Cal. Const. art. I, § 1.

113. Apple's business practices are further unfair because (1) the injury to consumers is substantial; (2) the injury is not outweighed by any countervailing benefit to consumers or competition; and (3) consumers could not reasonably have avoided it. Plaintiff could not avoid a hidden danger that her phone did not timely disclose or help her locate.

114. Reasonably available alternatives existed to further Apple's legitimate business interests. Apple's practices are a continuing course of unfair competition because Apple continues to sell AirTags.

115. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. She suffered injury in fact and lost money or property as a result of Apple's conduct, as alleged above.

116. Under Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Apple from engaging in the unfair business practices alleged here in connection with the sale of AirTags, and restitution to the extent permitted by law.

**COUNT VI**

**STRICT LIABILITY: DESIGN DEFECT**

**(South Carolina Law, S.C. Code Ann. § 15-73-10; Pleaded in the Alternative)**

117. Plaintiff repeats and realleges all preceding paragraphs.

118. She pleads this Count in the alternative to Counts I through V, as Federal Rule of Civil Procedure 8(d)(2) and (3) permit, to the extent the Court determines that South Carolina law governs.

119. One who sells any product in a defective condition unreasonably dangerous to the user or consumer is subject to liability for physical harm caused to the ultimate user or consumer if the seller is engaged in the business of selling the product and it reaches the user or consumer without substantial change. S.C. Code Ann. § 15-73-10(1). Liability applies even if the seller exercised all possible care. *Id.* § 15-73-10(2). The comments to Section 402A of the Restatement (Second) of Torts express the legislative intent of the statute. *Id.* § 15-73-30.

120. Apple is engaged in the business of selling AirTags. The AirTag used to track Plaintiff reached Stalker without substantial change in its condition.

121. When the AirTag left Apple's control, it was in a defective condition unreasonably dangerous to persons foreseeably exposed to it, including Plaintiff. Its risk of enabling covert tracking of people outweighed its benefits. Feasible safer alternative designs existed, including automatic detection for Android users.

122. The design defect proximately caused Plaintiff's harm. Stalker's use was foreseeable. It was the precise risk Apple anticipated.

123. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged above.

**COUNT VII**

**STRICT LIABILITY: FAILURE TO WARN**

**(South Carolina Law, S.C. Code Ann. § 15-73-10; Pleaded in the Alternative)**

124. Plaintiff repeats and realleges all preceding paragraphs.

125. She pleads this Count in the alternative to Counts I through V, as Federal Rule of Civil Procedure 8(d)(2) and (3) permit, to the extent the Court determines that South Carolina law governs.

126. A product sold without adequate warnings of a known danger may be in a defective condition unreasonably dangerous under S.C. Code Ann. § 15-73-10. *See id.* § 15-73-30.

127. Apple knew or should have known that AirTags would be used to track people without consent. Apple failed to give tracked persons, including Android users like Plaintiff, prompt, persistent, and understandable warnings. It also failed to give clear instructions on how to find and disable a hidden AirTag.

128. The danger was not apparent to Plaintiff. The AirTag was hidden, and Apple did not alert her.

129. Apple's failure to warn and instruct proximately caused Plaintiff's harm. Plaintiff never received any warning. An adequate, automatic warning on her Android phone would have alerted her to the AirTag before Stalker could learn her safe places.

130. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged above.

**COUNT VIII**

**NEGLIGENCE**

**(South Carolina Law; Pleaded in the Alternative)**

131. Plaintiff repeats and realleges all preceding paragraphs.

132. She pleads this Count in the alternative to Counts I through V, as Federal Rule of Civil Procedure 8(d)(2) and (3) permit, to the extent the Court determines that South Carolina law governs.

133. Apple owed a duty to exercise reasonable care in designing, testing, marketing, warning about, and supporting the AirTag. That duty ran to persons Apple foresaw would be tracked with AirTags, including Plaintiff.

134. Apple breached that duty by releasing and continuing to sell the AirTag with inadequate safeguards against foreseeable stalking; failing to provide automatic detection for Android users; failing to adopt feasible safer alternative designs; and failing to warn tracked persons adequately.

135. Apple's breaches proximately caused Plaintiff's injuries, for the reasons alleged above. Stalker's misuse was foreseeable. It was the very harm Apple's safeguards were meant to address.

136. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment against Apple and award the following relief:

a. Judgment in Plaintiff's favor on the causes of action in this Complaint, including, in the alternative, the South Carolina causes of action;

b. Actual damages, including for past and future mental anguish and emotional distress, in an amount to be proven at trial and exceeding $75,000;

c. Punitive damages under Cal. Civ. Code § 3294 and, in the alternative, exemplary or punitive damages under applicable South Carolina law, in an amount to be proven at trial;

d. Restitution and injunctive relief under Cal. Bus. & Prof. Code § 17203 to the extent permitted by law;

e. Reasonable attorney's fees under Cal. Civ. Proc. Code § 1021.5 and any other applicable law;

f. Pre-judgment and post-judgment interest as permitted by law;

g. Costs of suit; and

h. Such other relief as the Court deems just and proper.

Dated: November 4, 2026

Respectfully submitted,
**STINAR LANNEN, PLLC**

By: /s/ Patrick Lannen
Parker G. Stinar, Esq. (pro hac vice)
Patrick C. Lannen, Esq. (pro hac vice)

Counsel for Plaintiff

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b) and Civil L.R. 3-6, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 4, 2026

Respectfully submitted,
**STINAR LANNEN, PLLC**

By: /s/ Patrick Lannen
Parker G. Stinar, Esq. (pro hac vice)
Patrick C. Lannen, Esq. (pro hac vice)

Counsel for Plaintiff